Good morning, and may it please the Court, my name is Stephan Love, and I'm here on behalf of Denise Halicki and Eleanor, and I'd like to reserve three minutes for rebuttal,  I'm going to talk first about the copyright issue and then the breach of contract claims in the case. On copyright, there's no question before this Court right now concerning infringement. The question is kind of a threshold question, whether Eleanor, the car character, gets any copyright protection at all. The District Court said she doesn't. As a result of that, for example, a motor oil... Why isn't Eleanor a prop versus a character? This Court in DC Comics held that the Batmobile is a car character, and the very same traits that made the Batmobile a protected car character by copyright have equivalent traits making Eleanor a car character. And I believe Judge Mendoza is getting at the point raised by Amiki between a distinction between props and characters. I should point out that distinction has no connection to any case of this Court or any decision of any other Court that I'm aware of. And it also kind of gives this word character a meaning it doesn't really have in this Court's case law. This Court uses that word character to single out any element of a protected work that is itself recognizable and sufficiently distinctive to merit independent protection. It doesn't have to be sentient or a person or an animal. It's not limited in that way, at least not by anything this Court or any other Court has said. So character here is not a literary term. It's really a copyright term designating something meriting protection within a work. Before we apply the test for determining whether it is a character or whether it is copyrightable, we have to determine whether it is a character, right? I mean, there would be some items in movies that would not be characters, right? What about lightsabers in a Star Wars film? So there's no, no Court, again, has ever laid out some kind of threshold test on the threshold test of whether something is even a character. Well, should this be the case where we do that? No, Your Honor, it shouldn't. And let me quote from something from DC Comics, the Batmobile decision. Even when a character lacks sentient attributes and does not speak, it can be a protectable character if it meets this standard. And the Court there is referring to its three-element test. That character term, again, really means kind of any element that is a distinct element within a work that is passing the DC Comics test. So recognizable, physical, as well as conceptual characteristics, and especially distinctive with some unique elements. That's it, according to this Court. Character, again, means such an element or a part of a work. Doesn't mean a person versus a prop or anything like that. But tell me, how are we going to distinguish going forward if folks put names on props as opposed to names on characters, how is it that we are going to determine what is protected and what is not under your rule or your analysis? It's not my rule, Your Honor. It's this Court's rule in DC Comics. And if it is a name put on what some might view as a prop, then we simply apply the test. Is it sufficiently recognizable? Does it have these especially distinctive characteristics? I should step back a minute and say, even if the Court is inclined to make some kind of determination of a character test before determining whether that character is copyrightable, there would be no basis to hold that Eleanor is not a character if the Batmobile is a character. It necessarily follows from the DC Comics decision that the Batmobile is a character. The very same attributes that make the Batmobile so have equivalent attributes for Eleanor. The DC Comics panel emphasizes first and foremost the Batmobile's bat-like appearance. This isn't something to do with sentience or agency. It's a physical characteristic. That corresponds- But Eleanor was yellow, I think, in the 1960s movies, changed to gray, a different Mustang in the 1960s, changed to a GT 500. Why- I mean, we're talking about different things. How can we say that this is the same character? The Eleanor car character is always a fastback Mustang that's been physically customized so it doesn't look like any other fastback Mustang before from circa 1970 with distinct conceptual characteristics as well. Now, I should just clarify one point, Judge Mendoza. Eleanor was never a GT 500 in her actual appearance. And there's actually no argument that she is. Some of the characters in the remake film call her a GT 500, but that was really just a script writer's decision. As far as her actual appearance, she's not a GT 500. There's a whole settlement between Miss Hallecky and Shelby, which says Shelby can make GT 500s. Miss Hallecky can make Eleanors. If these were the same thing, that settlement would make no sense. So it's not a GT 500. It was always a customized fastback Mustang. Now, to get to the other point of Judge Mendoza's question, the Batmobile is very different in the 1960s television show versus the 1989 film in its outward appearance. But this court looked past that to see the general idea of a bat-like appearance on a car. And there's pictures attached to the end of that decision, which make clear just how different the two versions look. They're an appendix to the DC Comics decision. The same could be said for Eleanor, even though the 1970, the original film, 1974 film, Eleanor looks somewhat different from how she looks in the remake. There is the general higher level similarity of her appearance. Now, the other traits of the Batmobile that made it worthy of this court's view that it gets copyright protection are its maneuverability, its advanced technology, and that it consistently helps Batman fight crime. Now, there's, again, no mention of agency or its own private intentions ascribed to the Batmobile. This court talks about how, and I'm quoting from DC Comics, the Batmobile's characteristics allow Batman to maneuver quickly while he fights villains. Its high-tech gadgets are used to aid Batman in fighting crime. So every time the court talks about the Batmobile as a crime-fighting car, it's connecting that to Batman's goals. The same goes for Eleanor's other non-physical characteristics. She's always very difficult for the main human character to steal. That drives a lot of the action of both of the Gone in 60 Seconds films. We hear about that human character's history of trying to steal her in the remake. In the original, we see it on screen. The other feature of Eleanor is she can elude the police using her maneuverability, her speed, much like the Batmobile, and with a dramatic, spectacular jump that always finally shakes the police at the end of the chase. Those characteristics perfectly correspond to the equivalent characteristics of the Batmobile that made it worthy of protection. So even if the court entertains doubts about a character test, whether we need to have that too, that could never be the basis for distinguishing Eleanor from the Batmobile. There is no conceptual daylight between these two car characters. And the court here cannot overrule DC Comics. So it's ultimately bound by that decision to find Eleanor as protected as well. Well, let me ask you this, counsel, because as the court said when it remanded the original Haliki case, these are really highly fact-intensive issues, right? Your argument, necessarily you have to map Eleanor onto the Batmobile because of our ruling in that case, but you're moving it close to a lot of other prop-like cars. That's the backdrop of a lot of heist movies, for example. So when we look at whether Eleanor is closer to the Batmobile or closer to this other category of cars, we'd have to then weed out some of the district court's factual findings that perhaps the original Ninth Circuit panel that looked at the case the first time sort of accepted, right? Because those factual suggestions or findings are subject to clear error review. So what do we do with that? The fact that the first time we looked at this case, maybe not with as full sum of a record in terms of factual findings of characteristics. The court still reviews the district court's decision de novo. That's clear from this court's Daniels decision, which is the more recent character copyright decision, and the DC Comics decision. It's always a de novo inquiry. But counsel, I think what I hear Judge Wynn saying is that we have to look at, that was the whole point of sending it back to the district court and have them make factual findings. So grapple with her question, though. I mean, what do we do with those factual findings? The only factual issue here is a kind of mixed issue of applying the policy behind copyright law to the facts of the films themselves. That's the record. This court is able and should view those films with, in its minds, the DC Comics test. That's the long and the short of it. There's no layer, if you will, of findings to which this court defers that are above the simple facts of what you see in the films. What we have are the content of the films and the DC Comics test applied to that. This court is able to view the films just as capably as the district court was. In fact, the case law is clear that's the right thing to do, to independently view the films. I'm sorry, does my clock show, did it start at 15 or 12? Oh, okay. Did you want to save some time? I did want to save three minutes, yeah, but I have, I'll say one more thing on the copyright point and then I'll reserve the balance of my time. The court could also, Judge Mendoza raised a question about the original Eleanor versus the remake. The court could also hold that remake Eleanor from the 2000 film is protected by copyright and set aside the question of original Eleanor. Are there any cases though where a court has ignored prior versions of a character and just looked at the most recent version to determine copyrightability? That seems, that doesn't have an intuitive appeal to me. There are no cases where that's specifically been done. It does have an intuitive appeal for this reason. Suppose there's a film with a secondary character, very much undeveloped. Ten years later, another film really develops that secondary character and somebody Is that what happened here? I mean, I thought Eleanor was not just a secondary character. She's not, but the point would be that in a situation like that, for example, in the second film, the character as presented there could merit protection regardless of the first film's presentation of that same character. So it would be, it would go against the idea that copyright protects original elements of larger works to say, well, here's this other work, this other motion picture that somehow negates the originality that is embodied in this second version. And I'll reserve the balance of my time. Thank you. May it please the court. Good morning, your honors. Irene Lee for the Shelby Parties. Of the 15 minutes allotted for our time, Shelby will take 10, of which we will reserve one minute to address the following four issues and obviously the questions that's been discussed so far. So just to address some of the points raised by my colleague across the aisle, there is definitely support for the threshold test that was proposed by the 20 professors. The 20 professors in Abacus Brief, page 13 through 16, it cites two Disney productions versus Air Pirates. That is a 1978 Ninth Circuit case. And also it gleans and borrows the language from the prong one of the towel test as well. It focused on the language. When you look at the prong one, it says the character must generally display physical as well as conceptual qualities. And they found a support in the conceptual qualities. So even the Ninth Circuit, when they came down with the three prong test in towel, they were already recognizing that conceptual quality must be present in order to have a character. So just to make the record clear, affirmance of the lower court's findings and the rulings does not require or turn on this adopting a threshold test or any other test or modifying the existing test. However, we do agree with the 20 professors that having some form of a threshold test to determine whether we're dealing with a character versus a prop would have been very useful in this case, Your Honor. Especially when you're dealing with a situation where a purported character is found to be a thing. Counselor, your friend on the other side seems to suggest that we just have to look at one case and that's the DC Comics case. This is akin to the Batmobile. This is akin to that character in their view. What's your position with regards to that argument? We disagree, Your Honor. In this case, we have 11 fungible discrete stock cars crossing across four different films. And they do not, the 11 cars do not constitute a single character, let alone a copyright protectable one. So for various reasons, we can make- But you're saying, because we did say in Tau that the Batmobile is so distinctive that every time it pops up, everybody knows that's the Batmobile. I mean, there may be different iterations of the Batmobile, but everybody knows that's the Batmobile. And the same, is it true of Eleanor? No, Your Honor. I do recognize that they argue the recognizability as if that is the test under prong two. It is not, Your Honor. When you look at Tau, when you look at Daniels, they do not talk about recognizability in a vacuum. Recognizability is a result of having a character. First of all, you have to have a character. And then the character is developed through multiple productions, multiple iterations. And what you're focusing on is persistence, consistency in these character traits over time. So the things that you have to focus on is, what are the core consistent identifiable character traits? Have they been developed? Is it sufficiently fixed, sufficiently defined, sufficiently delineated? And as a result of it, you have a character that you recognize as the character, not as a yellow car that you see when you see one of the nine cars in the first three films, but as the character whenever he appears. That phrase, whenever it appears, Daniel's panel meant it. It appears four times in one page. So here, we disagree that Batmobile is somehow equivalent or synonymous with this Eleanor. We do not have a character in this case, Your Honor. That being the case, then what does the character prop distinction or test give us that TAL doesn't? So TAL test is a three-pronged test already assuming that you're dealing with a character. It is helpful to have a threshold test, and we don't need a separate test, by the way. We can clarify the conceptual qualities coming out of prong one. And if Your Honor can clarify that that means having some form of volition, volitional agency, some form of power and ability to process data. Batmobile, for example, is processing data and making a volitional decision to engage in autonomous driving. And it stops when they see two kids crossing the street. That is not something that Batmobile told it to do. It has ability to process data and be able to act and think and be able to get to a place that Batmobile meant to go. So the episode that is referenced in the amicus brief is the 1967, February 1st. This is the Penguin capturing Batman and Robin. They're tied up there and they're about to be catapulted across the Gotham City. Batman quickly checks the data of the trajectory. They're gonna land 30 yards south of 7th Street and Mulberry. Sends the data to Batmobile. It gets activated. Now it engages in the self-driving mode. Gets there, but it doesn't just go there. It knows exactly how to go without specific information because it has the volition to do so and has a personality that we talked about. So the test, so we have to find a test that the difference between a character and a prop would be a thinking, something that has a soul, something that has, I mean, what's the essence? We're getting very philosophical here, but I mean, that's what you're asking us to do. Yes, and only in a situation like this when you are presented with a purported character that is an object, that is a thing that is not voiced by or played by human. In those cases, it will be very helpful to have this test to determine that we're not dealing with a prop we're in fact dealing with a character. Are there any other circuits that have already addressed this question? What cases would we cite other than the DC Comics toll case? Other than those cases, unfortunately, I don't think any party has taken liberty of abusing the subjectivity in the three prop tests as the appellants have. Right now, when you have a prop, when you're talking about briefcase from Pulp Fiction, when you have a lifesaver from Star Wars, we know that that's a prop. It's not voiced by, played by human. We know that it's just the plot device. When you see a briefcase that's carried around by Vincent and Jules, the main two characters played by John Travolta and Samuel L. Jackson, we recognize that briefcase to be the briefcase. In fact, there's only one briefcase in the entire movie, but we would never call that a character because it doesn't have the volition. It doesn't have a personality. So there's no case because nobody's ever tried to argue it before? I think that is our case. And in this case, did you all argue below that this is just a prop, not a character? We tried, you know, we tried. Okay. Oh, I recognize that I'm over my time. Thank you, Your Honor. Good morning, Your Honors. My name is Marina Bogorad. I represent Respondents Classic Recreations and Tony and Jason Engel. Just very quickly responding on the prop versus character test. I would like to submit that the DC Comics case says a car can be a character, but not every car is a character. So the dicta in that case does not preclude a finding that this particular car is not a character. It does not preclude a finding that this particular car is a prop. And as Ms. Lee said, it's a prop because it doesn't think, it doesn't act outside of human interaction. Eleanor is not Batmobile and it's not close to being a Batmobile because Batmobile thinks and acts on its own. It's a self-driving car. Also, Batmobile, every time it appears on the screen, has Bat-like appearance. Every time Eleanor appears on the screen, you have to tell the viewer that this is Eleanor because otherwise it doesn't get recognized. That's all I had on the copyright. I want to move on to contract and declaratory relief claims unless the court has questions for me on copyright. So on copyright, I'd like to tell the court why the judgment on appellant's contract claims and declaratory judgment claims should be affirmed. As a preliminary matter, the court need not reach these claims if it affirms the copyright judgment. The only contract claims on this appeal against my clients are copyright-based and appellants conceded that the declaratory judgment claim should also go if copyright judgment is affirmed. Now, regardless of copyright findings, the contract judgment should be affirmed for at least four reasons. One, they showed no contract damages below. Two, they showed no injury. Three, it's time-barred, just like, by the way, copyright claims. That was the alternative ground for affirmance that we argued. And fourth, there was a finding of no liability on the contract against Tony and Jason Engel. So on respondents Tony and Jason Engel, just really quickly, there was a finding that they're not a party to this contract, that they are not liable on this contract. So there is, and this was not challenged on appeal. So the court can safely affirm the contract claims against these two respondents because they are not liable on this contract. On the no contractual damages point, appellants claim they get restitution, but restitution is an equitable remedy. It requires a showing of inadequate compensatory damages, which wasn't shown in this case. Appellants argue they get disgorgement, which is also an equitable remedy. They try to say, well, our disgorgement is restitution, which is a legal remedy. Trouble is they never show why theirs is legal and not equitable. Any disgorgement, as we showed in the cases we cited, is an equitable remedy. It is an equitable remedy when it comes to contract two. They cite trade secret cases, which also discuss inadequacy of compensatory damages in order to grant restitution. And restitution, by the way, is something that has to be taken from plaintiffs. Here, nothing was taken from plaintiffs. The contract said you had to stop making this car. They alleged that there was a breach and my clients continued making this car. They made profits. These profits never belong to appellants, so they cannot be given back, so to speak. Let me ask you this. If we agree that the court should have perhaps considered giving some sort of declaratory relief, should we just remand and then allow the district court to make a determination as to the scope of that DEC relief in the first instance? Are you asking for more than that? So on DEC relief, the only issue was the injunction that was allegedly violated from the prior litigation. That was their declaratory relief claim. And the court dismissed this claim on the pleadings because the injunction on its face was limited to one car only. They now try to enlarge the scope of injunction and say that it was broader than that and addressed some kind of other rights. But on its face, as the prior appellate decision in California appellate court showed, it was always limited to one car. Well, that's what I'm asking. The scope of it is determined by the district court in the first instance. That's right. It should be a pretty narrow remand then, right? I'm sorry, could you repeat the question? There will be a remand and the district court sorts out those issues in the first instance. We don't need to sort that out. We submit that it should be affirmed. It was dismissed on the pleadings and it should be affirmed because there's no error of law that appellant showed. On its face, the injunction limited to one car. There's no other rights it addresses. The prior appellate decision said so and there's no reason shown to reverse on declaratory relief. And just very quickly on statute of limitations,  the statute of limitations runs from the breach. They introduced no evidence it was a secret breach. So this is an alternative ground to affirm copyright claims, contract claims and declaratory judgment relief claims. Thank you, Your Honors. You're over time, but let me see if my colleagues have any additional questions. Thank you, counsel. Thank you. Yes. Starring Eleanor. That's the only credit that the viewer sees at the beginning of the first gone in 60 seconds. Counsel, if a yellow Mustang pulls up here, you're telling me that all of these people here, well, maybe not counsel, would think, ah, Eleanor out there. That's not the test, Your Honor. The test is whether a viewer... It's part of the test, right? No, Your Honor, it's not. You're talking about recognizability and that's recognizability for a viewer of the film. Do they recognize the character as a character within the film? It's not real world recognizability. That's clear from the case law. That would be a factual determination. Recognizability depends on, can the viewer see this as a character through the work? Starring Eleanor, that's the only credit. Go to the Peterson Automotive Museum. We've got the Batmobile. This is the movie car floor right over here. You got remake Eleanor right over here. This is a star car. This is not a stock car. The Batmobile has countless really distinct characteristics that like Judge Mendoza was alluding to, anybody on the street would recognize. What are those similar distinct characteristics that Eleanor has? They are the very distinctive physical customizations of each version of Eleanor. And again, the test, you're maybe getting it right. But they change throughout the films, correct? They're not the same. There are two versions of Eleanor, the original and the remake, and they have different customizations. But within each film, the character remains recognizable. That's the test. Again, we shouldn't conflate this with a kind of real world recognizability. That would get at the infringement inquiry, perhaps, which is simply not before the court here. Now, the other side tried to suggest some distinctions between the Batmobile and Eleanor, and they invented them. They invented things that aren't in DC Comics. They talked about it's an autonomous vehicle. It can process data. It gets portrayed by a human. Literally none of these things comes up in DC Comics. They're inventions of the amicus. And in fact, they go against what DC Comics actually says. This also pronged one conceptual characteristics. The amicus misunderstood this element, which is introduced in the Air Pirates decision. And unfortunately, counsel on the other side repeated that misunderstanding. Conceptual characteristics are viewed as less powerful than physical in defining a character. I'm gonna quote from Air Pirates, and then I will close. A comic book character, which has physical as well as conceptual qualities, is more likely to contain some unique elements. So it's the physical embodiment of the character in a comic book or a film that makes it more likely to merit protection. Unlike, say, a literary character, which might be more likely to be an idea. And with that, I would request reversal on all claims and thank the court very much. Thank you. Finally, on our cross appeal, Your Honors, this court should undo the lower court's error by reversing its refusal to issue a declaration that the GT500CR, that's the accused product, does not infringe appellants in ultra property rights or contract rights. Shall be approved at summary judgment that GT500CR does not violate any of their copyright or trademark. We also prove at trial that we do not violate any of their contract rights or trade rights. So it was illogical for the lower court to say, Shelby did not carry its burden of non-infringement. So for that reason, we ask that this reversible error be rectified. And just to address your question, Your Honor, we are asking is reversed and remand with the direction consistent with the findings so that lower court can add a declaration saying that GT500CR does not violate any of their intellectual property rights or contract rights. Thank you, Your Honors. Thank you, counsel. Thank you to both sides for your very helpful arguments this morning. The matter is submitted.
judges: NGUYEN, MENDOZA, KERNODLE